788 A.2d 636

Bishop L. ROBINSON,

v.

Edward R. BUNCH, III, et al.

No. 111, Sept. Term, 1998.

Court of Appeals of Maryland.

Jan. 11, 2002.

Andrew H. Baida, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland and Michele J. McDonald, Assistant Attorney General, on brief), Baltimore, for petitioner.

Joseph B. Espo (Brown, Goldstein & Levy, LLP, on brief), Baltimore, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY *, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI, (Retired, specially assigned), JJ.

ELDRIDGE, Judge.

This is an action by employees and a former employee of the Division of Parole and Probation, which is part of the Maryland Department of Public Safety and Correctional Services, against the Secretary of the Department, for monetary damages based on the plaintiffs' allegations that they were not paid for overtime work in excess of forty hours per week. The plaintiffs assert that the failure to pay them for overtime work violated the federal Fair Labor Standards Act ("the FLSA"), 29 U.S.C. §§ 201 through 219.

Although other issues have previously been raised in this case, the dispositive issues are whether Maryland law provides a remedy or remedies for adjudication of the plaintiffs' claims and, if so, whether the present action was an authorized remedy. We shall hold that Maryland law does provide a statutory administrative and judicial review remedy for adjudication of the plaintiffs' claims and that the remedy is exclusive. We shall further hold that, because the present lawsuit is not encompassed by the exclusive statutory administrative and judicial review remedy, the Circuit Court correctly dismissed the action.

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled

## I.

The plaintiffs-respondents Henry Boulware and Charles Woods are parole and probation officers employed by the Division of Parole and Probation. The plaintiff-respondent Edward Bunch was formerly employed by the Division. In 1995, Bunch, Boulware, and Woods filed suit in the United States District Court for the District of Maryland against Bishop L. Robinson, then the Secretary of the Department, for alleged violations of the FLSA. Specifically, the plaintiffs sought monetary relief against Secretary Robinson, alleging that the Secretary had not paid them overtime pay for work exceeding forty hours per week.[1] The United States District Court dismissed the suit for lack of subject matter jurisdiction, relying on the United States Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), which held that Congress lacked the authority to abrogate the states' Eleventh Amendment immunity from suits of this type in federal courts.

Thereafter, in 1997, Bunch, Boulware, and Woods instituted in the Circuit Court for Baltimore City the present action against the Secretary, seeking monetary damages for the alleged violations of the overtime provisions of the federal FLSA. In addition, Bunch sought damages for "wrongful termination" of his employment, asserting that the termination

pursuant to the Constitution, Article IV, Section 43A, he also participated in the decision and adoption of this opinion.

1. Prior to bringing the federal court action, the plaintiff Bunch had been terminated as an employee in the Division for incompetence and inefficiency in the performance of his duties. Bunch instituted an administrative grievance proceeding pursuant to Maryland Code (1993, 1997 Repl.Vol.), §§ 12–101 through 12–405 of the State Personnel and Pensions Article, and pursued all of the statutory steps of the grievance procedure. He raised the FLSA overtime pay issue in the administrative proceedings, arguing that it was impossible to complete the work assigned to him in a forty hour work week, and that, because of the Secretary's refusal to pay for overtime work, he refused to work in excess of forty hours per week. The final administrative decision was adverse to Bunch, and, in the action for judicial review, both the Circuit Court and the Court of Special Appeals, in an unreported opinion, upheld the administrative decision. Bunch did not file in this Court a petition for a writ of certiorari.

of his employment was because of his overtime claim under the FLSA. The plaintiffs' complaint stated that their action was authorized by two provisions of the FLSA, namely 29 U.S.C. §§ 215(a)(3) and 216(b).[2] The plaintiffs alternatively contended that their action was authorized by Maryland law.

The Secretary filed a motion to dismiss, arguing that the State's sovereign immunity barred the federal causes of action

---

Although raised in the trial court, neither a party in this Court nor any order by this Court has raised the question of whether Bunch should be precluded, under principles of res judicata or collateral estoppel, from litigating the overtime pay issue in the present case. Accordingly, we shall express no opinion on the question.

**2.**  29 U.S.C. § 215(a)(3) provides as follows:
" **§ 215. Prohibited acts; prima facie evidence**
(a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—

*  *  *

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."
29  U.S.C. § 216(b) states (emphasis added):
"(b) Damages; right of action; attorney's fees and costs; termination of right of action
"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. *An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more.employees for and in behalf of himself or themselves and other employees similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of

under 29 U.S.C. §§ 215(a)(3) and 216(b), and that Congress had no authority to abrogate that immunity by authorizing suits of this nature against a state official in state courts. With regard to any possible causes of action under Maryland law, the Secretary maintained that such actions were precluded by the plaintiffs' failure to invoke and exhaust their administrative and judicial review remedies provided by the statutory provisions concerning state employee grievances. The Secretary also argued that Bunch's claim was prohibited by principles of res judicata or collateral estoppel.

The Circuit Court, agreeing with the Secretary's arguments based on sovereign immunity, the lack of Congressional authority, and the failure to invoke and exhaust state law administrative and judicial review remedies, granted the motion to dismiss. The Circuit Court did not reach the issue of whether the plaintiff Bunch's claim was barred by principles of res judicata or collateral estoppel.

The plaintiffs appealed, and the Court of Special Appeals reversed, *Bunch v. Robinson,* 122 Md.App. 437, 712 A.2d 585 (1998). The intermediate appellate court initially held that the substantive overtime provisions of the FLSA were applicable to the plaintiffs under the language of the FLSA and the Supreme Court's most recent decision on the subject, *Garcia v. San Antonio Metro. Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The *Garcia* opinion held that Congress has the power under the Commerce Clause [3] to make the minimum wage and overtime provisions of the FLSA applicable to state government employees. The Court of Special Appeals in the present case went on to hold that the State's Eleventh Amendment immunity from suit applied only to federal court actions and had no application to state court actions. *Bunch v. Robinson, supra,* 122 Md.App. at 455–460, 712 A.2d at 593–596. Finally, the Court of Special Appeals

---

this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title."

3.  Article I, Section 8, cl. 3, of the United States Constitution.

held that the right to bring a state court action under the FLSA, 29 U.S.C. § 216(b), "preempted" the Maryland statutory administrative and judicial review remedy. *Bunch*, 122 Md.App. at 461, 712 A.2d at 596–597.

The Secretary filed in this Court a petition for a writ of certiorari, presenting only a single question as follows:

"Does Congress, acting under Commerce Clause authority insufficient to overcome Eleventh Amendment immunity, possess sufficient power to abrogate state sovereign immunity in state court?"

This Court granted the petition and issued a writ of certiorari, *Robinson v. Bunch*, 351 Md. 285, 718 A.2d 234 (1998).

Thereafter, the parties filed in this Court a joint motion to postpone briefing and argument until the Supreme Court of the United States decided a case then pending before it, *Alden v. Maine*, which involved the same issue that was presented in the Secretary's certiorari petition. We granted the motion and postponed briefing and argument. Subsequently, the Supreme Court rendered a decision in *Alden v. Maine*, 527 U.S. 706, 712, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636, 652 (1999), holding as follows:

"We hold that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts. We decide as well that the State of Maine has not consented to suits for overtime pay and liquidated damages under the FLSA. On these premises we affirm the judgment sustaining dismissal of the suit."

After the Supreme Court's decision in *Alden v. Maine*, the Secretary filed in this Court a motion to "summarily reverse the decision of the Court of Special Appeals." The plaintiffs did not oppose this motion. Nevertheless, this Court denied the motion, amended the order granting the certiorari petition by adding issues of Maryland law, and scheduled the case for briefing and argument. The issues added by this Court

concerned the right of the plaintiffs to maintain this action under the Maryland Constitution, particularly in light of Article 19 of the Declaration of Rights as well as several of our cases, and, alternatively, the right to bring such an action pursuant to various Maryland statutory provisions.[4]

## II.

There are two issues raised in this case which can be disposed of quite briefly.

■ *First,* it is clear that the Supreme Court's decision in *Alden v. Maine, supra,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636, requires that we overrule the Court of Special Appeals' holding that the plaintiffs are entitled to maintain this action under the remedial provisions of the FLSA invoked by the plaintiffs. The *Alden* case made it clear that the FLSA could not constitutionally authorize an action such as the one here involved. At the same time, however, the Supreme Court made it clear in *Alden,* 527 U.S. at 755, 119 S.Ct. at 2267, 144 L.Ed.2d at 678–679, that *state law* could authorize such actions.

■ *Second,* the Secretary argues that this Court should not consider the additional Maryland law issues, set forth in our order which amended the earlier order granting the certiorari petition, because those issues were not raised in this Court by any party. The Secretary maintains that, particularly in light of the plaintiffs' "lack of opposition in this Court to the Secretary's motion for summary reversal, those issues should not be reached in this case." (Petitioner's brief at 13).

The Secretary's argument lacks merit. Maryland Rule 8–131(b) provides that this Court "*ordinarily* will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review...." (Emphasis added). In addition to the qualification inherent in the word "ordinarily," the above portion of the rule

---

4. Article 19 of the Declaration of Rights states:
   "**Article 19. Remedy for injury to person or property.**
   "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without

is prefaced by the further qualification, "[u]nless otherwise provided by the order granting the writ of certiorari...." [5]

This Court has consistently taken the position, under Rule 8–131(b) and under our certiorari practice prior to the adoption of a rule on the subject, that in our order granting certiorari, or in a later order having the effect of amending the order granting certiorari, we may either limit the issues or add issues which the parties have not presented in certiorari petitions or cross-petitions. *See, e.g., Lovelace v. Anderson,* 366 Md. 690, 711, 785 A.2d 726, 738 (2001) ("Our order granting the certiorari petition neither limited nor expanded the issues for review by this Court"); *State v. Parker,* 334 Md. 576, 597, 640 A.2d 1104, 1114 (1994) ("this Court possesses the discretion to consider issues that were not ... raised in the petition ... for a Writ of Certiorari"); *Dempsey v. State,* 277 Md. 134, 143, 355 A.2d 455, 459 (1976) (issues are determined by "this Court's order granting certiorari").

Moreover, in circumstances where we have determined that the proper resolution of a case requires our consideration of certain matters not dealt with by the parties, we have by order added issues that were neither presented in certiorari petitions and cross-petitions nor raised in the courts below. *See, e.g., County Council v. Dutcher,* 365 Md. 399, 405, 780 A.2d 1137, 1140 (2001) ("The parties were directed to brief and argue ... three additional issues formulated by the Court");

---

any denial, and speedily without delay, according to the Law of the land."

5.  Maryland Rule 8–131(b) in its entirety states (emphasis added):
    "**Rule 8–131.  Scope of review.**
    * * *

    "(b) **In Court of Appeals—Additional limitations.**  (1) Prior appellate decision.  *Unless otherwise provided by the order* granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals *ordinarily* will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals.  Whenever an issue raised in a petition for certiorari or a cross-petition involves, either expressly or implicitly, the assertion that the trial court committed error, the Court of Appeals may consider whether the error was harmless or non-prejudicial even though the matter of harm or prejudice was not raised in the petition or in a cross-petition."

*Owens–Illinois v. Zenobia,* 325 Md. 420, 450, 601 A.2d 633, 647, *reconsideration denied,* 325 Md. 665, 602 A.2d 1182 (1992) ("In granting the petitions for a writ of certiorari in these cases, this Court issued an order requesting that the briefs and argument encompass the following [additional] issue"); *Schochet v. State,* 320 Md. 714, 725, 580 A.2d 176, 181 (1990) ("The case was initially briefed and argued before us on the three issues presented in Schochet's certiorari petition. After the first oral argument, the court sua sponte added a new issue and ordered reargument"); *Board v. Town of Riverdale,* 320 Md. 384, 387, 578 A.2d 207, 209 (1990) ("In addition to the three issues raised by the Board, this Court raised a fourth question").

Consequently, we reject the Secretary's contention that the issues of Maryland law, added by our order, should not be reached.[6]

### III.

The Secretary has not challenged the Court of Special Appeals' holding that the substantive overtime provisions of the FLSA, 29 U.S.C. § 207, are applicable to these State employees in light of *Garcia v. San Antonio Metro. Transit Authority, supra,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d

---

**6.** Furthermore, one of the issues of Maryland law was raised by the Secretary in the trial court and in the Court of Special Appeals, but was not raised in the Secretary's certiorari petition filed in this Court, namely whether Maryland statutes provide a remedy for the plaintiffs and whether that remedy is exclusive. As previously mentioned, the Court of Special Appeals held that the federal remedy provided by 29 U.S.C. § 216(b) "preempted" any Maryland statutory remedy. After the decision in *Alden v. Maine,* the Court of Special Appeals' preemption theory became invalid. Consequently, if this Court did not reach any of the Maryland law issues, it would be necessary to remand this case for further appellate proceedings in the Court of Special Appeals in order for that court to determine whether Maryland law provides a remedy and, if so, whether it is exclusive, thereby precluding the present action. *See* the discussion in *Matthews v. Amberwood,* 351 Md. 544, 580–581, 719 A.2d 119, 136–137 (1998). In *Matthews* we decided such an issue, which was not encompassed by the grant of certiorari, rather than remanding for further appellate proceedings in the Court of Special Appeals. We did so "in the interests of judicial economy."

1016. Consequently, we shall proceed upon the assumption that the substantive overtime provisions of the federal statute are applicable, even though the remedial provisions of the federal act are not.

Maryland Code (1993, 1997 Repl.Vol.), Division I, subtitle 3 entitled "Overtime Compensation," § 8–302 of the State Personnel and Pensions Article, states as follows:

" § 8–302.   **Construction and entitlement.**

(a) *Construction of subtitle.*—This subtitle shall be interpreted and applied, to the extent applicable, in accordance with the federal Fair Labor Standards Act

(b) *Entitlement.*—All employees subject to this subtitle are entitled to the greater of:

(1) the benefits that are provided in this subtitle; or

(2) to the extent applicable, the benefits required by the federal Fair Labor Standards Act."

*See also* Article 2 of the Maryland Declaration of Rights.[7]

Furthermore, § 14–103 of the State Personnel and Pensions Article provides in pertinent part as follows:

" § 14–103.   **Limitation on defense of sovereign immunity.**

Except as otherwise specifically provided by State law, this State, its officers, and its units may not raise the defense of sovereign immunity in any administrative, arbitration, or judicial proceeding involving an employee grievance or hearing that is held under:

(1) this Division I or a regulation adopted under it. . . ."

As previously indicated, § 8–302(b), mandating that covered employees are "entitled" to overtime compensation either

---

7.  Article 2 of the Declaration of Rights provides (emphasis added):

"The Constitution of the United States, and *the Laws made, or which shall be made, in pursuance thereof,* and all Treaties made, or which shall be made, under the authority of the United States, are, and *shall be the Supreme Law of the State;* and the Judges of this State, and all the People of this State, are, and shall be bound thereby; anything in the Constitution or Law of this State to the contrary notwithstanding."

under state law or the FLSA, whichever is greater, is part of Division I and, therefore, would appear to be embraced within § 14–103's waiver of the defense of sovereign immunity. In addition, §§ 14–201 through 14–204 of the State Personnel and Pensions Article provide a mechanism for the payment of a "judgment" in a "judicial proceeding" involving a "hearing that is held under . . . this Division I . . . ." [8]

■ The above-reviewed statutory provisions make it clear that covered state employees are entitled to overtime compensation in accordance with applicable state law or the FLSA, whichever is greater, that there is a duty on the part of the State or the appropriate officials to make such payments or provide for them through the budget process, and that sovereign immunity is not a defense.

---

**8.** Sections 14–201 through 14–204 provide as follows:

" **§ 14–201. 'Award' defined.**

In this subtitle, 'award' means a final monetary or benefit award or judgment in an administrative, arbitration, or judicial proceeding involving an employee grievance or hearing that is held under:

(1) this Division I or a regulation adopted under it; or

(2) a personnel policy or regulation that governs classified employees of the University System of Maryland or Morgan State University."

" **§ 14–202. Payments–In general.**

If this State has sufficient money available at the time, an award made against this State or an officer or unit of this State shall be paid as soon as practicable within 20 days after the award is final."

" **§ 14–203. Same—Money not immediately available.**

(a) *Report to Comptroller.*—If sufficient money is not available at the time to satisfy an award made against this State or an officer or unit of this State, the affected unit or officer shall report the outstanding award to the State Comptroller.

(b) *Duties of Comptroller.*—The Comptroller shall:

(1) keep an accounting of all outstanding awards; and

(2) report that accounting annually to the Governor."

" **§ 14–204. Same–Budget; payment of outstanding awards.**

(a) *Budget.*—The Governor shall include in the State budget sufficient money to pay all awards made against this State or an officer or unit of this State.

(b) *Payment of outstanding awards.*—On appropriation of money by the General Assembly, the Comptroller shall authorize payment of all outstanding awards in the order of the date on which each award was made."

■ In light of these statutory provisions, if the General Assembly had not enacted a specific statutory remedy, state employees would certainly have a common law remedy in Maryland courts to enforce their rights to mandated overtime compensation under state or federal law. As we recently summarized in *Doe v. Doe*, 358 Md. 113, 127–128, 747 A.2d 617, 624 (2000),

"Article 19 [of the Maryland Declaration of Rights] insures that rights belonging to Marylanders are 'not illegally or arbitrarily denied by the government.' *State v. Board of Education*, 346 Md. 633, 647, 697 A.2d 1334, 1341 (1997). Furthermore, under Article 19, 'a plaintiff injured by unconstitutional state action should have a remedy to redress the wrong.' *Ashton v. Brown*, 339 Md. 70, 105, 660 A.2d 447, 464–465 (1995). *See Weyler v. Gibson*, 110 Md. 636, 653–654, 73 A. 261, 263 (1909). Moreover, even with regard to causes of action not based upon constitutional violations, 'Article 19 does guarantee access to the courts.' *Johnson v. Maryland State Police*, 331 Md. 285, 297, 628 A.2d 162, 168 (1993). *See also, e.g., Renko v. McLean*, 346 Md. 464, 484, 697 A.2d 468, 478 (1997); *Murphy v. Edmonds*, 325 Md. 342, 365, 601 A.2d 102, 113 (1992); *Whiting–Turner Contracting Co. v. Coupard*, 304 Md. 340, 360, 499 A.2d 178, 189 (1985)."

Furthermore, long ago this Court held that if a "statute has created and imposed a clear, positive duty" upon governmental officials to pay a sum of money, the entity or person to whom the money is owed has a "plain remedy, by ordinary action at law, which it could ... pursue[ ] for the recovery of the money." *George's Creek Coal & Iron Co. v. County Comm'rs of Allegany Co.*, 59 Md. 255, 261 (1883). *See Frankel v. Board of Regents*, 361 Md. 298, 308–309, 761 A.2d 324, 329–330 (2000), and cases there cited. *See also* Code (1984, 1999 Repl.Vol.), §§ 12–201 through 12–204 of the State Government Article (generally waiving governmental immunity in contract actions); *Roland Electrical Co. v. Black*, 163 F.2d 417, 426 (4th Cir.1947), *cert. denied*, 333 U.S. 854, 68 S.Ct. 729, 92 L.Ed. 1135 (1948) (where Judge Soper for the court stated that "the provisions of the [Fair Labor Standards] Act with reference to ... overtime compensation ... are read into and

become a part of every employment contract that is subject to the terms of the Act").

The General Assembly has, however, established a statutory administrative and judicial review remedy for state employees who claim that they have not been compensated in accordance with applicable legal requirements. Sections 12–101 through 12–405 of the State Personnel and Pensions Article sets forth a detailed administrative grievance procedure for an employee of the Executive Branch of the State Government to invoke and follow if there is a dispute over, *inter alia,* the appropriate amount of compensation to which the employee is entitled. Pay disputes are clearly encompassed by this grievance procedure. *See, e.g., Comptroller v. Nelson,* 345 Md. 706, 694 A.2d 468 (1997); *Briscoe v. Health Department,* 323 Md. 439, 593 A.2d 1109 (1991). The only types of compensation disputes between state employees and their employer which are excluded from the administrative grievance procedure are "dispute[s] about: (i) a pay grade or range for a class; (ii) the amount or the effective date of a statewide pay increase...." *See* § 12–101(b)(2) of the State Personnel and Pensions Article. A dispute between individual employees and the appropriate state officials concerning overtime compensation is clearly encompassed by the administrative grievance procedure.

In addition, "back pay" is expressly stated to be one of the remedies which a decision maker can award under the grievance procedure. *See* § 12–402 of the State Personnel and Pensions Article. A final administrative decision in a state employee grievance proceeding involving an Executive Branch employee is subject to judicial review under the Maryland Administrative Procedure Act, Code (1984, 1999 Repl.Vol.), §§ 10–203 and 10–222 of the State Government Article.

As to the exclusivity of the employee grievance proceeding remedy, § 12–103 of the State Personnel and Pensions Article provides as follows (emphasis added):

"**§ 12–103. Right to bring grievance; exclusiveness of remedy.**

(a) *Right to bring grievance.*—An employee with a grievance or the grievant's representative may present the grievance free from coercion, discrimination, interference, reprisal, or restraint.

(b) *Remedy exclusive.*—Unless another procedure is provided for by this article, *the grievance procedure is the exclusive remedy* through which a nontemporary employee in the State Personnel Management System may seek an administrative remedy for violations of the provisions of this article."

The overtime compensation claims of the plaintiffs-respondents are based on alleged violations of "this article," namely §§ 8–301 through 8–309 of the State Personnel and Pensions Article. Moreover, no other constitutionally valid procedure is expressly provided for alleged violations of these overtime provisions.

The language of § 12–103 evidences the General Assembly's intent that the administrative and judicial review grievance procedure constitutes the exclusive remedy for claims such as those made by the plaintiffs-respondents in this case. Accordingly, the Legislature intended to preclude direct judicial actions such as the present one. *See Utilities v. WSSC,* 362 Md. 37, 45, 763 A.2d 129, 133 (2000) ("It is well settled in Maryland that when there is a special statutory remedy for a specific type of case, and that remedy is intended to be exclusive ..., a party 'may not circumvent those [special statutory] proceedings by a' " different action, quoting *Montgomery County v. Broadcast Equities,* 360 Md. 438, 456, 758 A.2d 995, 1005 (2000)). *See also, e.g., Bell Atlantic v. Intercom,* 366 Md. 1, 11–12, 782 A.2d 791, 796–797 (2001); *Furnitureland v. Comptroller,* 364 Md. 126, 133, 771 A.2d 1061, 1065 (2001); *Josephson v. Annapolis,* 353 Md. 667, 674–681, 728 A.2d 690, 693–696 (1998); *Holiday v. Anne Arundel,* 349 Md. 190, 201–203, 707 A.2d 829, 834–836 (1998); *Zappone v. Liberty Life,* 349 Md. 45, 60–64, 706 A.2d 1060, 1067–1069 (1998).

Finally, the Legislature may ordinarily substitute a statutory remedy, including a statutory administrative and judicial

review remedy, for a common law remedy without violating Article 19 of the Declaration of Rights or other Maryland constitutional provisions. *See, e.g., Ashton v. Brown,* 339 Md. 70, 104–108, 660 A.2d 447, 464–466 (1995); *Maryland Aggregates v. State,* 337 Md. 658, 675–682, 655 A.2d 886, 895–898, *cert. denied,* 514 U.S. 1111, 115 S.Ct. 1965, 131 L.Ed.2d 856 (1995); *Johnson v. Maryland State Police,* 331 Md. 285, 297 n. 8, 628 A.2d 162, 168 n. 8 (1993); *Ritchie v. Donnelly,* 324 Md. 344, 374 n. 14, 597 A.2d 432, 446 n. 14 (1991); *Branch v. Indemnity Ins. Co.,* 156 Md. 482, 144 A. 696 (1929); *Solvuca v. Ryan & Reilly Co.,* 131 Md. 265, 101 A. 710 (1917).

Consequently, the Circuit Court correctly dismissed the action by the plaintiffs-respondents.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*