883 A.2d 205

DEPARTMENT OF HEALTH AND MENTAL HYGIENE

v.

Bernard RYNARZEWSKI.

No. 653, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 15, 2005.

David R. Morgan (J. Joseph Curran, Jr., on brief), for appellant.

Hillary G. Davis, Towson, for appellee.

Panel DAVIS, KENNEY, MEREDITH, JJ.

MEREDITH, J.

The Maryland Department of Health and Mental Hygiene ("DHMH") appeals from a judgment of the Circuit Court for Baltimore City that ordered DHMH to comply with an order of an administrative law judge ("ALJ") to reinstate a terminated employee, Bernard Rynarzewski, appellee, with back pay and benefits. Although we agree with appellee that the circuit court properly ordered DHMH to comply with the ALJ's ruling that Rynarzewski be reinstated and shall affirm that portion of the judgment, we conclude that the circuit court erred in construing the administrative decision to establish that Rynarzewski was fit to return to work as of March 3, 1999. Consequently, we shall vacate that portion of the circuit court's order that held that Rynarzewski's entitlement to back pay should be calculated as if he had been fit to return to work on March 3, 1999.

This controversy had its origins in a grievance filed by Rynarzewski, but the present appeal is not here by way of a petition for judicial review of an administrative decision. Indeed, even though DHMH sought revision of the ALJ's reinstatement ruling by filing a motion for reconsideration as well as a second motion for reconsideration, DHMH never filed a petition for judicial review of the ALJ's ruling. Consequently, that administrative ruling, concluding that Rynarzewski's termination was unsustainable, is final and not subject to further review.

Because Rynarzewski and DHMH were never able to come to an agreement as to the terms and conditions of his return to duty, however, Rynarzewski filed a complaint to enforce the ALJ's order. The complaint was based upon Maryland Code, State Government Article (1999, 2002 Supp.), § 10–222.1, which provides, in relevant part:

(a) *Enforcement.*—A party to a contested case may timely seek civil enforcement of an administrative order by filing

a petition for civil enforcement in an appropriate circuit court.

\* \* \*

(e) *Remedies.*—A party in an action for civil enforcement of an administrative order may request, and a court may grant, one or more of the following forms of relief:

(1) declaratory relief;

(2) temporary or permanent injunctive relief;

(3) a writ of mandamus; or

(4) any other civil remedy provided by law.

DHMH has appealed from the circuit court's order entered in the action for enforcement pursuant to § 10–222.1.

Because the underlying administrative order was never the subject of a petition for judicial review, we must accept the findings of fact made by the ALJ regarding the events that led to Rynarzewski filing a grievance to object to his termination by DHMH. The ALJ made the following findings:

1. The Employee began working with DHMH during August 1974.

2. From August 1974, through May 5, 1998, the Employee worked for DHMH as a Health Facility Surveyor with the Licensing and Certification Administration of DHMH. In this capacity, the Employee's work consisted mainly of reviewing fiscal records of long-term care facilities and auditing time records of the staff located within those facilities.

3. During the time period from August 1974, through May 5, 1998, the Employee received employment evaluations of "Meets Standards" or higher.

4. As a result of allegations that the Employee was not performing his job function as a Health Facility Surveyor properly, Management transferred the Employee into another position, effective May 6, 1998. In the new position, the Employee was required to review contracts submitted by applicants to long-term care facilities to determine whether the contracts comported

with a model contract prepared by DHMH and to determine whether the contracts otherwise comported with the law.

5. Prior to his entry into the new position, the Employee received no training whatsoever as to his new job functions.

6. The Employee lacked the requisite knowledge and experience to perform his new job functions.

7. The Employee expressed his concerns about his inability to perform his new job function to his immediate supervisor, Ms. Sharon Smith, and to Ms. Smith's supervisor, Mr. Essler. Both individuals advised the Employee that his reassignment was based on a directive from Carol Benner, the Director of the Office of Health Care Quality, that they were unable to assist him, and advised him to commence his job function. Neither individual offered the Employee an opportunity for training on his new job function.

8. The Employee perceived the actions of DHMH as a conspiracy, which would eventually cause him to fail at his work and result in his terminations from his employment. The Employee experienced debilitating physical symptoms, such as: loss of appetite, anxiety, poor concentration, sleeplessness, and the inability to perform his daily activities.

9. In May, 1998, the Employee sought advice from his medical doctor who in turn referred him to a psychiatrist, Mayer Crockin Liebman, M.D., F.A.P.A. P.A.

10. The Employee was treated by Mayer C. Liebman, M.D. from May 1998 through at least March 2, 1999. Dr. Liebman diagnosed the Employee with 1–Anxiety Disorder, Axis I; 2–Bi–polar Disorder; and 3–Hyperactivity Attention Deficit Disorder. His treatment included psychotherapy, a course of medication, and supportive counseling.

11. As a result of these conditions, the Employee was unable to work from the time period from May 17, 1998, through March 2, 1999.

12. Throughout the duration of the Employee's absence, DHMH received Dr. Liebman's notifications that the Employee was unable to return to work as a result of his psychiatric condition.

13. DHMH referred the Employee to its in-house Medical Advisor, Peter Oroszlan, M.D., M.P.H., and F.A.C.P.M. During the 15–minute evaluation, a nurse recorded the Employee's blood pressure and Dr. Oroszlan spoke with the Employee. Dr. Oroszlan conducted neither a full physical examination, nor a full mental examination. While Dr. Oroszlan had an opportunity to review Dr. Liebman's treatment records concerning the Employee, Dr. Oroszlan concluded that the Employee was fit to return to work.

14. DHMH ordered the employee to return to work on February 1, 1999.

15. Based on the advice of Dr. Liebman, the Employee did not return to work on February 1, 1999.

16. [Pursuant to a notice of termination dated February 12, 1999,] DHMH terminated the Employee, effective February 22, 1999, due to insubordination.[1]

The only issue before the ALJ was whether DHMH had properly issued the February 12, 1999, notice of termination that was based upon the allegation that Rynarzewski committed an act of insubordination by failing to comply with the employer's order that he report for duty on February 1, 1999. The ALJ concluded that DHMH had failed to carry its burden of proving that Rynarzewski's failure to report to work on

---

1. The decision of the ALJ indicates that Rynarzewski appealed the termination notice to the Office of Administrative Hearings on August 28, 2001. Neither party has provided any explanation for the delay between the issuance of the termination notice and the appeal.

February 1, 1999, was an act of insubordination in violation of COMAR 17.04.05.04B(12). Rather, the ALJ concluded:

After a review of all the evidence, it is my conclusion that the Employee's absence from work was due to his legitimate mental disability....

... I conclude as a matter of law that the Employee committed no act of insubordination in his refusal to return to work during the time period from May 17, 1998, through February 22, 1999. It is my conclusion that the Employee's failure to return to work was the result of a documented mental condition. Therefore, I conclude that the Notice of Termination is not sustainable under COMAR 17.04.05.04B(12).

### ORDER

I ORDER that the Notice of Termination filed against the Employee be reversed and that the Employee be reinstated with back pay and benefits retroactive to the date the Employee was fit to return to duty.

On August 11, 2003, Rynarzewski filed the action in the circuit court, pursuant to S.G. § 10–222.1, asking the court to specifically enforce the order of the Office of Administrative Hearings by "ordering [DHMH] to comply with the reinstatement and back pay award contained therein." Rynarzewski also asked the circuit court to grant a declaration of the rights and responsibilities of the parties, and to order "such other and further relief" as may be required.

DHMH responded by filing a motion to dismiss, or alternatively, a motion for summary disposition, arguing that the order could not be enforced because the referenced "date the Employee was fit to return to duty" had never been determined. DHMH attached to its motion various documents that indicated that, even after DHMH issued the February 12, 1999, notice of termination, Rynarzewski's psychiatrist continued to submit notes that stated Rynarzewski was not fit to return to work. The final letter from Dr. Liebman reflected that Rynarzewski would be reevaluated on April 27, 1999.

DHMH asserted that Rynarzewski had never submitted documentation that he was "fit to return to duty" as of any date. DHMH also attached an affidavit of the Chief of the Employee Relations Division, who stated under oath, "To date [June 6, 2003], I have received no further communications from [Rynarzewski's] counsel—nor has [DHMH] been notified by Mr. Rynarzewski or received medical documentation from his Psychiatrist, Mayer C. Liebman, M.D.—concerning a date when Mr. Rynarzewski will be fit to return to duty." DHMH further argued that Rynarzewski could not utilize an action pursuant to § 10–222.1 for the purpose of making the ALJ's decision more definite.

In response to the motion filed by DHMH, Rynarzewski argued that the controversy was ripe for adjudication by the circuit court, noting, "the [ALJ's order] contains no prerequisites to its enforceability." Rynarzewski's opposition continued:

The Order of the ALJ can be divided into three parts: "I ORDER that [1] the Notice of Termination filed against the Employee be reversed and that [2] the Employee be reinstated [3] with back pay and benefits retroactive to the date the Employee was fit to return to duty." (ALJ's Decision at page 11) There simply is not [any] condition precedent to the Department's obligation to reinstate [Rynarzewski]—the Order provides that the Notice of Termination was to have been reversed and Petitioner reinstated. The issue of when Petitioner "*was* fit to return to duty" relates only to that part of the Order concerning the calculation of back pay, not to the duty of the Department to reinstate Petitioner.

Clearly, once Petitioner has been reinstated, if the Department has reason to believe that he is not fit for duty, it has appropriate measures available.

Rynarzewski also pointed out that the ALJ had made an express "finding of fact that the Petitioner was unable to work 'from the time period for May 17, 1998, through March 2, 1999.'" Rynarzewski argued the award of back pay should account from March 2, 1999, because that was the date

referenced in the ALJ's decision as the end of the period during which Rynarzewski "was unable to work."

After the circuit court denied the motion filed by DHMH, Rynarzewski filed a motion for summary disposition. DHMH responded by renewing the arguments it had asserted in support of its motion to dismiss. The circuit court granted Rynarzewski's motion, noting, correctly, that "the ALJ made a finding of fact that the Petitioner was unable to work 'from the time period for May 17, 1998 through March 2, 1999.' [See finding No. 11.] This factual finding was not appealed by the Department through judicial review." The circuit court made an erroneous leap in logic, however, to conclude that the above finding of fact was equivalent to an express finding of fact that Rynarzewski was fit to return to work on March 3, 1999. The ALJ made no such finding of fitness. Because the only issue before the ALJ was whether Rynarzewski had been properly terminated by the notice dated February 12, 1999, the specific date on which Rynarzewski was fit to return to work has never been adjudicated in a grievance proceeding. *Cf. Robinson v. Bunch,* 367 Md. 432, 445–46, 788 A.2d 636 (2002) (grievance proceedings are exclusive remedy for State employees to complain of issues relating to their employment). *See* S.G. § 12–103(b).

DHMH cites the factually similar case of *Wilson v. Simms,* 380 Md. 206, 844 A.2d 412 (2004), for the proposition that a court cannot utilize a mandamus proceeding to supplement or make additions to an administrative order. The circuit court concluded that *Wilson* was distinguishable because the present case was not a pure mandamus proceeding, but, rather, was based upon § 10–222.1.

■ We agree with DHMH that the underlying rationale of *Wilson,* which precludes a circuit court from granting relief that is normally the exclusive province of an administrative agency, is equally applicable to a complaint to enforce an administrative order pursuant to § 10–222.1. If the administrative order that is the subject of the enforcement action failed to cover, or failed to address with adequate specificity, a

remedy sought by a party, the circuit court cannot perform the agency's function by filling in the gaps under the guise of "enforcing" the administrative order pursuant to § 10–222.1. *See Maryland Aviation Administration v. Noland*, 386 Md. 556, 574 n. 3, 873 A.2d 1145. (2005) ("[A] court may not substitute its exercise of discretion for that exercised by the Executive Branch agency or official.").

 We agree with DHMH that the appropriate avenue for Rynarzewski to contest and/or establish the amount of back pay to which he is entitled is to file another grievance. DHMH proposes this course of action in its brief in this Court, stating:

> A third administrative remedy—one that remains available to Rynarzewski—is to proffer to the Department a date certain when he was fit to return to duty and to request that the Department apply the ALJ's Order with respect to that date. If Rynarzewski is aggrieved by the result, he can appeal the Department's decision to OAH, rather than the circuit court, for a final agency determination of when he was fit to return to duty. That OAH finding would be subject to judicial review and only then to civil enforcement, if necessary, by the circuit court.

Because DHMH has specifically confirmed to this Court that Rynarzewski can pursue a grievance to determine the amount of back pay and benefits due him, if he remains unable to come to an agreement with the employer on these issues, the agency will be estopped from raising an issue as to the timeliness of such grievance.

██ We agree with Ryanarzewski, however, that the issues of back pay and reinstatement are separate and severable. We note that in *Wilson*, for example, the improperly terminated employee was "reinstated" within 45 days after the ALJ issued the decision ordering reinstatement. 380 Md. at 213, 844 A.2d 412. In contrast, DHMH has yet to reinstate Rynarzewski. Nor has there been any resolution of any sick leave, vacation leave, retirement benefits, or other employment benefits that would have accrued to Rynarzewski since

February 22, 1999, but for his unsustained notice of termination. We infer from the arguments of counsel, although the record before us is vague on this issue, that there are benefits that inure to a State employee even when the employee is unable to report for duty for medical reasons. Because the ALJ in this case has conclusively determined that Rynarzewski had a valid medical reason for his failure to report for work at least through March 2, 1999, Rynarzewski is, at a minimum, entitled to any benefits that would have accrued to him through March 2, 1999, had DHMH not issued the invalid notice of termination. For the courts to make any further determination as to the benefits owed Rynarzewski, however, would require judges to perform an analysis that is exclusively the province of the State agencies to perform in the first instance.

Accordingly, the extent of the relief the courts can provide to Rynarzewski pursuant to his petition to enforce the administrative order dated July 31, 2002, is for the circuit court to order DHMH to reinstate Rynarzewski to the status he enjoyed on February 22, 1999, such that he will be in the same position he would have been in had the errant order to return to work as of February 1, 1999, and had the concomitantly errant notice of termination dated February 12, 1999, never been issued. Such order of enforcement shall be without prejudice to the right of Rynarzewski to pursue a new grievance in the event he is not satisfied with the employer's calculation of the compensation to which he is entitled in the way of back pay, leave, or other benefits of employment.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

**CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID 50% BY APPELLANT AND 50% BY APPELLEE.**